UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

DUANE WILLIAM BELL,

        Plaintiff,                      Case No. 2:12-cv-299

v.                                          Honorable Gordon J. Quist

TAMARA LAFOND, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Duane William Bell, a state prisoner confined at the Kinross Correctional Facility (KCF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Resident Unit Supervisor Tamara LaFond, Assistant Deputy Warden James Young, and Warden Mitch Perry, all of whom were employed at the Newberry Correctional Facility (NCF) during the pertinent time period.

Plaintiff alleges that on December 27, 2011, while he was confined at NCF, he gave a civil rights complaint to Defendant LaFond to be mailed out using the expedited legal mail form. On January 13, 2012, Defendant Young told Plaintiff that his mail was accidently mailed to the Alger Maximum Facility (LMF) and that Plaintiff should check the contents to make sure nothing was missing. Plaintiff did so and confirmed that everything was present. Plaintiff states that according to policy, he was supposed to be present when his legal mail was opened. Plaintiff contends that another inmate named Epps, whose mail had also been sent to LMF, told him that he suspected Defendant Young of intercepting the mail because he was filing an appeal of a misconduct he had received. When Plaintiff returned to the housing unit, he had another inmate send out his mail so that it would not be intercepted by Defendant Young. Plaintiff then called his mother and informed her of what had taken place.

On January 15, 2012, Plaintiff's mother subsequently called Defendant Young and asked him about the mail situation. Defendant Young informed her that it had been accidentally sent to LMF. Ms. Bell asked for a copy of the expedited mail form and Defendant Young told her she would have to contact Defendant LaFond. Ms. Bell then called LMF and was told that they did not have any knowledge of Plaintiff's mail coming to their facility. An investigation was conducted by LMF property room officer Hill, and it was discovered that the mail would not have been opened

by them because it was addressed to a government agency. In addition, any mail belonging to a prisoner at another facility would have been logged in, but there was no record of Plaintiff's mail arriving at LMF. Ms. Bell filed a Freedom of Information Act request on February 16, 2012, requesting any logged documentation regarding Plaintiff's legal mail from LMF. FOIA Coordinator Borsch responded, "No information concerning any legal mail belonging to Plaintiff ever came to [LMF] with another prisoner or otherwise, nor by any other name."

On January 30, 2012, business manager George Sevarns responded to Plaintiff's step I grievance by stating that his mail had been accidentally packed in another inmate's property when that inmate was transferred to LMF. It also indicated that after the mail was discovered, it was inspected and returned to NCF, where it was given to Plaintiff. Plaintiff filed a step II grievance and Defendant Perry responded that the cause of Plaintiff's mail being sent to LMF was human error and that he did not have to provide Plaintiff with the name of the inmate in whose property Plaintiff's mail was allegedly packed. Plaintiff's mother subsequently filed a complaint with the MDOC Northern Regional Administrator, Teri-Ann Sherry, whose secretary contacted staff at LMF. LMF verified that they never had any of Plaintiff's mail. Ms. Bell also filed a formal complaint with the U.S. Postmaster General.

Plaintiff claims that Defendants' conduct violated his rights under the First and Eighth Amendments, and seeks damages and equitable relief.

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff appears to be complaining that his outgoing mail was opened outside of his presence after being intercepted by Defendants. Plaintiff attaches a copy of the step II response to his complaint. In this response, Defendant Perry states:

> You claim that on January 13, 2012, legal mail, which you had sent out via Expedited Legal Mail Service through [Defendant LaFond] almost three weeks prior, had been returned to you. [Defendant Young] handed you the mail, claiming that it had been sent to another facility. The envelope was torn open, and had no indication on it of it going to any other facility. In the appeal you allege that it is clear that [Defendant LaFond] and others, arbitrarily violated policy. You demand proof of the Respondent's investigation.
>
> The Respondent Business Manager G. Sevarns, indicates that you were interviewed. He found that according to [Defendant LaFond], the mail in question was accidentally packed into another prisoner's property, and transferred to LMF. Upon it being discovered, the mail was sent back to NCF. [Defendant Young] returned the mail to you, with an explanation as to what had happened. He also had you confirm that all of your paperwork was there, and that nothing was missing. During the grievance interview, you stated that you sent the paperwork home to your mother, rather than sending it to the destination you had initially intended to send it.
>
> Due to human error, your mail was accidentally packed into another prisoner's property during an emergency pack-up, sent to another facility, and later returned to you. Upon returning the mail to you, and also confirming that none of your documents were missing, [Defendant Young] apologized to you for the incident. Staff were also reminded of the importance of the proper handling of legal mail. It is determined at this level that the response provided at Step I has adequately addressed the issue presented; therefore, your Step II appeal is denied.

(*See* Plaintiff's Exhibit G, docket #1-1, p. 18 of 20.)

A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]."

*Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir.1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822); *see Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822-823; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Interference with a prisoner's outgoing mail is constitutional if it is reasonably related to legitimate penological interests. *Thornburg v. Abbott,* 490 U.S. 401, 413 (1989). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 89-90 (1987).

The Michigan Department of Corrections does not limit the amount of outgoing mail a prisoner can send, and it generally allows prisoners to send sealed mail. *See* MDOC Policy Directive 05.03.118, ¶¶ Q, R (eff. 09/14/09) (Defendants' Exhibit 3). In circumstances where there is a significant potential for systemic abuse by prisoners, they are required to submit mail unsealed. In situations where a prisoner is being loaned money or is asking for expedited mail handling, the

MDOC requires a verification of the need for such services. In the vast majority of cases, the MDOC requires prisoners to pay for the cost of postage. *Id.* at ¶ N. The MDOC loans indigent prisoners the equivalent of postage necessary for mailing 10 first class letters per month. Once a prisoner has used this postage, he may qualify for a postage loan if the mail he is seeking to send qualifies under the policy. In order to determine if this is the case, the inmate is required to submit the mail unsealed. Prisoners must also submit mail unsealed if they are requesting expedited legal mail handling. *Id.* at ¶¶ J-M, O. Without this requirement, the expedited mail program would be subject to abuse and the purpose of providing this service would be defeated.

The mail at issue in this case was sent out by Plaintiff as expedited mail. Therefore, it had already been presented to Defendant LaFond unsealed. The mail was returned to him with nothing missing. The mail was not incoming mail from Plaintiff's attorney or from the Attorney General's Office, which Plaintiff was entitled to have opened in his presence. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993). There is no indication that Defendants attempted to prevent Plaintiff from re-sending the mail. Moreover, Plaintiff fails to allege that Defendants' conduct prevented him from filing a non-frivolous direct appeal, habeas corpus application, or civil rights claim, as is required to show a denial of access to the courts. *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Therefore, Plaintiff's First Amendment claims are properly dismissed.

Plaintiff also claims that Defendants violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction

of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff's claims in this case do not implicate the Eighth Amendment.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated: January 9, 2013                                        /s/ Gordon J. Quist
                                                             GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE